Argued at Pendleton, October 30, affirmed December 19, 1922.

## CASE v. McKINNIS.

(210 Pac. 1084.)

**Bills and Notes—Plaintiff Entitled to Contribution from Defendant on Payment of Corporation's Note Which He and Defendant Indorsed, Though He was Receiver of Corporation.**

Plaintiff, who, with defendant, indorsed notes of a corporation before delivery, on payment of notes was entitled to contribution from defendant, though he was appointed receiver of the corporation, where, as receiver, he rendered a full account of his receipts and disbursements and neither applied nor attempted to apply any of the corporate assets on his claim against the company, and made no claim to any of the corporate assets except as receiver of the corporation.

From Union: J. W. KNOWLES, Judge.

In Banc.

This is a proceeding to compel contribution. W. J. Case, the plaintiff, J. L. McKinnis, the defendant,

and another person indorsed two promissory notes before they were delivered and Case and McKinnis indorsed a third note before delivery. The Union County Telephone Company was the maker of the three notes. Case paid each of the three notes and then he began an action against McKinnis to recover one third of the amount paid on the first two notes and one half of the amount paid on the third note, claiming that the defendant must contribute on the theory that the indorsements were made upon an agreement by the indorsers that they would be equally liable.

The court overruled a demurrer to the complaint, and thereupon the defendant filed an answer containing both legal and equitable defenses. A reply having been filed, the court, on November 3, 1921, heard evidence relating to the issues arising out of the equitable defenses, and subsequently, on January 31, 1922, on motion of plaintiff and based upon findings of fact and conclusions of law previously filed, the court rendered a decree adjudging "that the equities are with the plaintiff upon the said issues," dismissing the alleged equitable defenses, and directing that "the main action at law proceed to trial upon the remaining issues of the pleadings." On April 1, 1922, the defendant appealed from the decree; and, notwithstanding the appeal from the adjudication of the issues arising out of the equitable defenses, on May 31, 1922, on motion of the defendant and over the objection of the plaintiff, the court fixed June 6, 1922, as the time for the trial of the remaining issues arising out of the pleadings and a trial of such remaining issues resulted in a verdict and a judgment for the plaintiff. The defendant also appealed from the judgment, so that the controversy comes to this court in two forms: One, an appeal from the decree

disposing of the equitable defenses; and, the other, an appeal from the judgment disposing of the legal defenses. The only questions now demanding our attention are those involved in the decree.

In substance the defendant asserted, as ground for equitable relief, that the Union County Telephone Company, the maker of the notes, transferred to the plaintiff all its assets, including a note of $12,000 and a mortgage securing that note, for the purpose of paying the debts of the company, including the indebtedness arising out of the execution and indorsement of the three notes paid by the plaintiff; that the plaintiff has failed and refuses to account to the defendant for any part of the property or to apply the proceeds of such property to the payment of the three notes. The defendant prayed that the plaintiff be required to account to the court for the property transferred to him by the telephone company and that upon such accounting such property be applied to the payment of all sums paid by plaintiff on the three notes.                    AFFIRMED.

For appellant there was a brief and oral argument by *Mr. J. D. Slater.*

For respondent there was a brief and oral arguments by *Mr. Geo. T. Cochran* and *Mr. Colon R. Eberhard.*

HARRIS, J.—We understand from the record that at some time in March, 1920, the telephone company sold its telephone system, and that the purchaser paid a considerable portion of the purchase price in cash and gave a note for $12,000, secured by a mortgage, for the balance of the purchase price. The purchaser, in order to free the telephone system from claims assertable against it, exacted as one of the con-

ditions of the purchase, that $3,000 of the cash paid on the purchase price be turned over to T. J. Scroggin, cashier of the United States National Bank of La Grande, to be by him used in the payment of claims for labor and material and in discharging outstanding bonds. Although the record is not as clear as it might be, we also understand that, in addition to the indebtedness owing for labor and material and on bonds and in addition to the three notes paid by the plaintiff, the telephone company was and still is indebted to the plaintiff on an unsecured note or notes and was and still is likewise indebted to the defendant on an unsecured note or notes, and was indebted to the McKinnis heirs on an unsecured note or notes. We infer that Scroggin paid out all but $289.40 of the $3,000 as required by the condition prescribed by the purchaser, and that subsequently Scroggin paid the $289.40 to Case after the latter had been appointed receiver of the telephone company.

On November 1, 1920, a meeting of creditors of the telephone company was held and Case was selected to act as trustee of the creditors; and on the same day a meeting of the board of directors of the telephone company was held and a motion was made and unanimously adopted "that W. J. Case be appointed to act as trustee for" the telephone company and that all the property of the company be transferred to him to be held and retained "in trust for the benefit of the creditors, and to be turned over to such creditors in due time." The property of the company was turned over to Case as trustee. At the same meeting the board of directors ordered the president to proceed at once with the dissolution "of the corporation of the Union County Telephone Co.,"

and a meeting of the stockholders was called for December 8, 1920. We are informed by one of the papers in the record that on December 8, 1920, the stockholders adopted a resolution for the dissolution of the corporation. On December 30, 1920, the corporation commissioner issued a certificate of dissolu, tion.

On December 10, 1920, W. J. Case signed and presented to the Circuit Court a petition for his appointment as receiver of the corporation showing that the stockholders and directors had adopted resolutions for the dissolution of the corporation; that the corporation was insolvent and unable to pay its debts; that there were claims against the corporation; and that there was then pending in that court an action in which J. L. McKinnis appeared as plaintiff and the corporation as defendant. Based upon the petition the Circuit Court appointed Case receiver. Case filed an oath and bond on December 11, 1920, and his bond was immediately approved. Case says that the action brought by McKinnis against the corporation was begun after "the notices were out to dissolve the corporation." The plaintiff testified that he initiated the receivership proceedings after having first consulted with his attorneys. It is claimed by Case that he held the company's property as trustee from November 1, 1920, to December 11, 1920, and that since the latter date he has held as receiver.

At the trial Case accounted for the property received by him. He showed that he received $309.66 as tolls and rentals, $720 interest on mortgage, $62.62 from the secretary of the corporation, $289.40 from Scroggin, and $232.02 refund from taxes, or a total of $1,613.70; and that he disbursed the total sum of $343.95, of which $110.05 was for taxes, $181.80 was for seven bonds which were paid in compliance

with the condition fixed by the purchaser of the telephone system, a portion was for a small labor claim, and $41, the remainder, was for "litigation and dissolution expenses." The cash balance in the hands of Case is $1,269.75; and we understand that this sum and the twelve-thousand-dollar note and mortgage embrace substantially all, if not all, of the assets of the corporation. The uncontradicted testimony of Case is:

"All of the money I applied on bonds was money turned over to me by Mr. Scroggin to apply on those bonds."

Case was president of the company, and prior to his appointment as trustee he endeavored to sell the twelve-thousand-dollar note and mortgage at a substantial discount, and also after his appointment as receiver he likewise tried to dispose of the paper, but without success. The uncontradicted testimony of Case is that, aside from the bonds, "there were no notes paid except some of the McKinnis (heirs) notes"; and he explained that "those were before I was appointed trustee. There has been no notes paid since I was appointed trustee."

Unquestionably, if by virtue of an agreement the indorsers are jointly and equally liable as claimed by the plaintiff, any security in the hands of one, as well as any indemnity received by one, will, by force of equitable principles, inure to the benefit of all. But Case has not applied a single dollar of the funds held by him on any indebtedness due him from the corporation. It may be that the assignment to Case as trustee is vulnerable; and it may be that the receivership proceeding is utterly void on account of the fact that the appointment was not made "in any civil action, suit or proceeding"; and, although it is

suggested by the plaintiff that the petition for the appointment of the receiver advised the court of the pendency of the action brought by McKinnis against the corporation and that therefore it can be said that "the receiver was appointed to represent the interests of the company in that action," and since the court had jurisdiction to decide, the appointment, even though erroneously made, was at the most voidable, and not void, and for that reason is not subject to collateral attack. While there is a vast difference between the act of appointing a receiver on a bare petition which is in no wise connected with a pending suit or action, and the act of appointing a receiver in a pending lawsuit, we did not deem it necessary to pass upon the validity of the appointment of the receiver; for, as found by the trial court, the fact remains that no part of the property of the corporation has been applied to the personal use of the plaintiff. All the evidence found in the record indicates that the assignment to Case as trustee for the creditors, as well as the alleged appointment of him as receiver, was in good faith and without any advantage over any other creditor. Regardless of whether or not Case was legally appointed receiver, the fact is that since December 11, 1920, he has been acting as though he were a duly appointed receiver, and he has acknowledged and still acknowledges that he is as receiver amenable to the orders of the Circuit Court.

Case has rendered a full account of his receipts and disbursements. He has neither applied nor attempted to apply any of the corporate assets on any of his claims against the company. He makes no claim to any of the corporate assets except as receiver of the corporation. If he had received indemnity or security, the defendant would also be en-

titled to the benefit of such indemnity or security; but the record does not present a situation entitling the defendant to any of the equitable relief asked for by him.

. The decree is affirmed. AFFIRMED.